# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. MICHAEL A. FARLEY, an individual, ) <br><br> Plaintiff, ) <br><br> ) <br> vs. ) <br> ) <br> 2. ANTHONY R. STACY, an individual; ) <br> 3. PAUL A. ROSS, an individual; PVPE ) <br> L.L.C., f/k/a PALO VERDE CAPITAL, L.L.C., ) <br> an Arizona limited Liability Company; ) <br> PALO VERDE CAPITAL, L.L.C., an Arizona ) <br> limited liability company; PALO VERDE ) <br> FUND, L.P., a Delaware limited ) <br> Partnership; PALO VERDE PRIVATE ) <br> EQUITY FUND, L.P., a Delaware limited ) <br> Partnership; company; and PETER S. DAVIS, ) <br> as receiver for PALO VERDE FUND, L.P., ) <br> PALO VERDE PRIVATE EQUITY FUND, ) <br> L.P., and PVPE, L.L.C, f/k/a PALO VERDE ) <br> CAPITAL, L.L.C., ) <br> ) <br> Defendants. ) | **14 CV -008 CVE - PJC**<br>Civil Action No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED**<br>JAN 6 2014<br>Phil Lombardi, Clerk<br>U.S. DISTRICT COURT |

## COMPLAINT

Plaintiff, Michael A. Farley ("Plaintiff"), by and through his undersigned counsel, brings this complaint against Defendants Anthony R. Stacy ("Stacy"), Paul A. Ross ("Ross"), PVPE, L.L.C. ("PVPE") f/k/a Palo Verde Capital, L.L.C. ("PV Capital"),[1] Palo Verde Fund, L.P. ("PV Fund" or "the Trading Fund"), Palo Verde Private Equity Fund, L.P. ("PV Private Equity" or "the Private Equity Fund"), and Peter S. Davis ("Davis"), as receiver for PV Fund, PV Private Equity, PVPE, and PV Capital (collectively, "Defendants") as follows:

---

[1]     Upon information and belief, in or about November 2011, PV Capital changed its name to PVPE, L.L.C.



## JURISDICTION AND VENUE

1.     This Court has original federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and/or 15 U.S.C. § 78aa, because the securities fraud claims herein arise out of violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

2.     This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal securities fraud claims in this lawsuit that all claims form part of the same case or controversy.

3.     Venue is proper in this district pursuant to 15 U.S.C. § 78aa, because a substantial part of the events giving rise to this controversy occurred in this district.

## THE PARTIES

4.      Plaintiff resides in Tulsa, Oklahoma.

5.     Defendant Stacy resides in Scottsdale, Arizona, but at all relevant times resided at 7321 93rd Place in Tulsa, Oklahoma and maintained a personal office in Tulsa, Oklahoma.  At all relevant times, Stacy was a registered broker-dealer in Oklahoma in the business of buying and selling securities.  Stacy was the Co-Founder of PV Capital which managed PV Fund and PV Private Equity.

6.     Defendant Ross resides in Tulsa, Oklahoma.  Ross was the Co-Founder of PV Capital which at all relevant times managed PV Fund and PV Private Equity.

7.     Defendant PVPE, L.L.C. f/k/a PV Capital is an Arizona corporation with a corporate address located at 2200 Bank of America Center, 15 W. 6th Street in Tulsa Oklahoma.

8.     Defendant PV Capital is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.  PV Capital was, at all relevant times, a registered

investment advisory firm which manages over 40 accounts totaling in excess of $100 Million of assets under management, including those held by PV Fund and PV Private Equity.

9.      Defendant PV Fund is a Delaware limited partnership with its principal place of business in Scottsdale, Arizona.  PV Fund was, at all relevant times, in the business of trading public U.S. securities as well as non-U.S. corporate securities.

10.      Defendant PV Private Equity is a Delaware limited partnership with its principal place of business in Scottsdale, Arizona.  The Equity Fund was, at all relevant times, in the business of selling illiquid equity investments.

11.      Defendant Davis of Simon Consulting, LLC in Phoenix, Arizona, is the receiver for PV Fund, PV Private Equity, PVPE, and PV Capital pursuant to the order issued by Arizona Superior Court for Maricopa County (Anderson, J.) in *Lynn H. Anthony Revocable Trust, et al v. Palo Verde Capital, LLC et al,* Cause No. CV2013-012420.

## FACTS

12.      Plaintiff has known Defendants Ross and Stacy for over fifteen (15) years to be sophisticated investors, and routinely relied upon Defendants' alleged expertise and recommendations for investment opportunities.

13.      Given their longstanding friendship and investment history, the Plaintiff trusted and relied upon Defendants Ross and Stacy to provide him with sound investment advice.

14.      The Plaintiff has made numerous investments based solely on the advice and counsel of Defendants Ross and Stacy.

15.      In fact, Plaintiff routinely met in person with both Defendant Ross and Defendant Stacy at Defendant Stacy's personal office in Tulsa, Oklahoma to discuss prospective investment opportunities for Plaintiff.

16.     Plaintiff has also maintained close personal friendships with Defendants Ross and Stacy for over fifteen (15) years, and has routinely socialized and vacationed with them both.

17.     Plaintiff's longstanding friendship and business relationship with Defendants Ross and Stacy gave rise to a special relationship of trust and confidence.

## A. **Plaintiff invests in the Private Equity Fund**

18.     In early 2010, Defendants Stacy and Ross met with Plaintiff in person on multiple occasions to encourage him to invest in their most recent venture, PV Capital, promising Plaintiff returns exceeding 14% in connection with a "new private equity deal" which was about to occur in the so-called Chinese markets.

19.     Defendants Stacy and Ross even suggested that they could "back-date" Plaintiff's investment so that he could take advantage of the potentially huge returns.

20.     Defendants Stacy and Ross represented that PV Capital would be entitled to a 1% management fee on Plaintiff's investment.

21.     Knowing that Defendant Stacy was a registered broker-dealer with vast experience in the industry, and knowing Defendant Ross to have similar proficiency, Plaintiff relied to his detriment on their promises and decided to make a substantial investment in PV Capital.

22.     In March 2010, Plaintiff issued a $390,000 check to the Private Equity Fund at the request of Defendants Ross and Stacy.

23.     The check was "back-dated" to March 1, 2010 but was not cashed until around March 10, 2010.

24.     As promised, Plaintiff earned approximately $57,000 in 2010 according to his Schedule K-1 which was equivalent to more than 14% of his $390,000 investment in the Private Equity Fund.  In accordance with federal regulations, Plaintiff paid taxes on the same.

25.   Plaintiff's 2011 Schedule K-1 indicated similar returns, and Plaintiff paid all taxes due.

26.   Plaintiff, however, did not receive a Schedule K-1 for 2012, despite inquiring on multiple occasions of both Defendants Stacy and Ross.

27.   With the 2012 tax deadline looming, Defendant Stacy finally told Plaintiff that he had earned about $17,000 on his Private Equity Fund investment, and Plaintiff, relying on Defendant Stacy's representations, paid taxes on that same amount.

28.   Plaintiff later learned that he had not earned anywhere near the $17,000 indicated by Stacy, because the Private Equity Fund had been struggling financially due to PV Capital's mismanagement through Defendants Ross and Stacy.

**B.   Plaintiff invests in the Trading Fund**

29.   In early 2011, Defendants Stacy and Ross again met in person with Plaintiff in Tulsa for the purposes of encouraging Plaintiff to invest in the Trading Fund.

30.   Given the fact that his prior investment in the Private Equity Fund was illiquid, making it difficult for him to remove his funds, Plaintiff expressed to Defendants Ross and Stacy his serious concerns about making another illiquid investment.

31.   Defendants Ross and Stacy, however, expressly assured Plaintiff that his prospective investment in the Trading Fund would be liquid, and that he could remove his assets at any time.  In fact, Defendants Ross and Stacy represented to Plaintiff that most of their investors in the Trading Fund routinely paid taxes with their earnings.

32.   Defendant Stacy and Ross again promised Plaintiff the same 14% return and reiterated PV Capital's 1% management fee.

33.     Neither Defendant Stacy nor Defendant Ross ever sought permission from Plaintiff to use all or part of Plaintiff's $500,000 investment for any purpose other than to trade stock.

34.     They, in fact, purposefully concealed from Plaintiff that they intended to wrongfully convert Plaintiff's liquid investment in the Trading Fund into a loan to the illiquid Private Equity Fund.

35.     Relying to his detriment on Defendants' Ross's and Stacy's material misrepresentations with regard to the liquidity of his investment in the Trading Fund, Plaintiff agreed to invest, and issued a check on or around March 11, 2011 in the amount of $500,000 to the Trading Fund.

36.     Plaintiff also rolled approximately $250,000 in IRA, stock and/or other investments over to PV Capital on approximately March 31, 2011.

37.     In approximately June 2012, Plaintiff wanted to liquidate his $500,000 investment in the Trading Fund in order to purchase a new home.

38.     Plaintiff contacted Defendants Stacy and Ross regarding this desire and was advised that his investment "was tied up" and could not be liquidated.

39.     Of course, a significant part of Plaintiff's decision to invest in the Trading Fund was premised on Defendants' Ross's and Stacy's representation to him that such investment would be liquid.

40.     Plaintiff has since learned that Defendants Stacy and Ross improperly used Plaintiff's $500,000 investment to make a loan from the Trading Fund to the Private Equity Fund without his knowledge or consent.

41.     In February 2013, Plaintiff received an investor letter from Defendant Stacy indicating that PV Capital was going to be dissolved effective March 31, 2013, and that all assets

6

then held by the Trading Funds would be liquidated and distributed during the month of April 2013.

42.    Of course, at that time, Plaintiff no longer had any liquid investments in the Trading Fund.

43.    With regard to assets then held by the Private Equity Fund, Defendant Stacy only promised monthly progress reports toward liquidity.

44.    Because the vast majority – if not all – of Plaintiff's investment exceeding $890,000 was tied up in the illiquid Private Equity Fund without his consent, Plaintiff could not cash out his investment.

45.    In approximately October 2013, PV Capital, the Trading Fund and the Private Equity Fund were placed in receivership.

## COUNT I

### VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934
### (All Defendants)

46.    Plaintiff repeats and re-asserts the allegations contained in Paragraphs 1 through 45 as though fully set forth herein.

47.    Federal law makes it unlawful to use or employ any manipulative or deceptive scheme or device in connection with the sale of any security.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5.

### The Private Equity Fund

48.    In approximately March 2010, Defendants engaged in the sale of securities to Plaintiff in the form of a $390,000 investment in the Private Equity Fund.

49.    In connection with that investment, Defendants Ross and Stacy – as authorized agents for PV Capital and the Private Equity Fund – knowingly made false assertions and

7

omissions of material fact upon which Plaintiff reasonably relied and which induced his investment.

50.    More specifically, Defendants Ross and Stacy deceptively represented to Plaintiff that he would enjoy 14% returns on his investment, knowing full well that such statement was false and materially important to Plaintiff's decision to invest.

51.    Defendants Ross and Stacy, acting on behalf of PV Capital and the Private Equity Fund, made such misrepresentations and omissions with the sole intention of inducing Plaintiff's investment in the Private Equity Fund.

52.    Plaintiff reasonably relied upon these assurances due to the trust he had developed in them as long-term friends and investment advisors.

53.    As a direct result of the Defendants intentional misrepresentations and omissions with regard to the interest that Plaintiff would earn on his $390,000 investment in the Private Equity Fund, the Plaintiff suffered damages.

54.    Defendant Stacy has committed securities fraud, pursuant to 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5, because he knowingly and recklessly made the untrue statement that Plaintiff would earn a minimum of 14% interest on his $390,000 investment in the Private Equity Fund when Defendant Stacy knew that Plaintiff would and did rely on his representations based on their long-term friendship and investment history.

55.    As a direct result of Defendant Stacy's fraudulent conduct, the Plaintiff suffered damages.

56.    Defendant Ross has committed securities fraud, pursuant to 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5, because he knowingly and recklessly made the untrue statement that Plaintiff would earn a minimum of 14% interest on his $390,000 investment in the Private Equity

Fund when Defendant Ross knew that Plaintiff would and did rely on his representations based on their long-term friendship and investment history.

57.    As a direct result of Ross's fraudulent conduct, the Plaintiff suffered damages.

58.    Defendant PV Capital, manager of the Trading and Private Equity Funds, has committed securities fraud, pursuant to 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5, because Defendants Stacy and Ross, acting as its agents with authority, knowingly and recklessly made untrue statements that Plaintiff would earn a minimum of 14% interest on his $390,000 investment in the Private Equity Fund when Defendants Stacy and Ross knew that Plaintiff would and did rely on their representations based on their long-term friendship and investment history.

59.    As a direct result of Defendant PV Capital's fraudulent conduct, the Plaintiff suffered damages.

60.    The Private Equity Fund has committed securities fraud, pursuant to 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5, because Defendants Stacy and Ross, acting as its agents with authority, knowingly and recklessly made untrue statements that Plaintiff would earn a minimum of 14% interest on his $390,000 investment in the Private Equity Fund with the sole intention of inducing Plaintiff's investment when they knew that Plaintiff would and did rely on Defendants Stacy's and Ross's representations based on their long-term friendship and investment history.

61.    As a direct result of the Private Equity Fund's fraudulent conduct, the Plaintiff suffered damages.

62.    Accordingly, Defendants Ross, Stacy, PV Capital and the Private Equity Fund have violated 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5 and Plaintiff is entitled to actual damages in the amount of $390,000 in addition to 14% interest thereupon.

## **The Trading Fund**

63.    In and around March 2011, Defendants engaged in the sale of securities to Plaintiff in the form of a $500,000 investment in the Trading Fund.

64.    In connection that investment, Defendants Ross and Stacy – as authorized agents for Defendants PV Capital, the Trading Fund, and the Private Equity Fund – knowingly made false assertions and omissions of material fact upon which Plaintiff reasonably relied and which induced his investment.

65.    More specifically, Defendants Ross and Stacy fraudulently represented to Plaintiff that he would enjoy 14% returns on his investment, knowing full well that such statement was false and materially important to Plaintiff's decision to invest.

66.    In fact, Defendants Ross and Stacy misrepresented to Plaintiff that any investment in the Trading Fund could be liquidated with ease, which was of material importance to Plaintiff's decision to invest.

67.    Defendants Ross and Stacy intentionally omitted their intention to misappropriate Plaintiff's $500,000 investment from the liquid Trading Fund to the illiquid Private Equity Fund.

68.    Defendants Ross and Stacy, acting on behalf of PV Capital, the Trading Fund, and the Private Equity Fund, made such misrepresentations and omissions with the sole intention of inducing Plaintiff's investment in the Trading Fund.

69.    Plaintiff reasonably relied upon these assurances due to the trust he had developed in Defendants Ross and Stacy as long-term friends and investment advisors.

70.    Without Plaintiff's knowledge or consent, Defendants Ross and Stacy, by and through Defendants PV Capital, the Trading Fund, and the Private Equity Fund, wrongfully

misappropriated Plaintiff's $500,000 investment in the Trading Fund as a loan to the Private Equity Fund.

71.     As a direct result of the Defendants' improper and unlawful misappropriation of the Plaintiff's $500,000 investment in the Trading Fund as a loan to the Private Equity Fund, the Plaintiff suffered damages.

72.     Defendant Stacy has committed securities fraud, pursuant to 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5, because he knowingly and recklessly made the untrue statement that Plaintiff would earn a minimum of 14% interest on Plaintiff's $500,000 investment in the Trading Fund and that such investment would be liquid.

73.     Defendant Stacy also concealed his intention to misappropriate said investment as a loan to the Private Equity Fund with the sole intention of inducing Plaintiff's $500,000 investment in the Trading Fund when Defendant Stacy knew that Plaintiff would and did rely on Defendant Stacy's representations based on their long-term friendship and investment history.

74.     As a direct result of Defendant Stacy's fraudulent conduct, the Plaintiff suffered damages.

75.     Defendant Ross has committed securities fraud, pursuant to 15 U.S.C. § 78j and 17 C.F.R. § 240.10b–5, because he knowingly and recklessly made the untrue statement that Plaintiff would earn a minimum of 14% interest on his $500 investment in the Trading Fund and that such investment would be liquid.

76.     Defendant Ross also concealed his intention to misappropriate said investment as a loan to the Private Equity Fund with the sole intention of inducing Plaintiff's $500,000 investment in the Trading Fund when Ross knew that Plaintiff would and did rely on Defendant Ross's representations based on their long-term friendship and investment history.

77.     As a direct result of Defendant Ross's fraudulent conduct, the Plaintiff suffered damages.

78.     Defendant PV Capital has committed securities fraud, pursuant to 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5, because Defendants Stacy and Ross, acting as its agents with authority, knowingly and recklessly made untrue statements that Plaintiff would earn a minimum of 14% interest on his $500,000 investment in the Trading Fund and that such investment would be liquid.

79.     Defendant PV Capital, acting through Defendants Ross and Stacy, intentionally concealed its intention to misappropriate said investment as a loan to the Private Equity Fund with the sole intention of inducing Plaintiff's $500,000 investment when it knew that Plaintiff would and did rely on Defendants Ross's and Stacy's representations based on their long-term friendship and investment history.

80.     As a direct result of Defendant PV Capital's fraudulent conduct, the Plaintiff suffered damages.

81.     The Trading Fund has committed securities fraud, pursuant to 15 U.S.C. §§ 78j and 17 C.F.R. § 240.10b–5, because Defendants Stacy and Ross, acting as its agents with authority, knowingly and recklessly made untrue statements that Plaintiff would earn a minimum of 14% interest on his $500,000 investment in the Trading Fund and that such investment would be liquid.

82.     The Trading Fund, acting through Defendants Ross and Stacy, also concealed its intention to misappropriate said investment as a loan to the Private Equity Fund with the sole intention of inducing Plaintiff's $500,000 investment in the Trading Fund when it knew that Plaintiff would and did rely on Defendants Ross's and Stacy's representations based on their long-term friendship and investment history.

83.     As a direct result of the Trading Funds' fraudulent conduct the Plaintiff suffered damages.

84.     The Private Equity Fund has committed securities fraud, pursuant to 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5, because Defendants Stacy and Ross, acting as its agents with authority, concealed its intention to misappropriate said investment as a loan to the Private Equity Fund with the sole intention of inducing Plaintiff's $500,000 investment in the Trading Fund when it knew that Plaintiff would and did rely on Defendants' Stacy's and Ross's representations based on their long-term friendship and investment history.

85.     As a direct result of the Private Equity Funds' fraudulent conduct the Plaintiff suffered damages.

86.     Accordingly, Defendants Ross, Stacy, PV Capital, the Private Equity Fund and the Private Equity Fund have violated 15 U.S.C. § § 78j and 17 C.F.R. § 240.10b–5 and Plaintiff is entitled to actual damages in the amount of $500,000, in addition to 14% interest thereupon.

## COUNT II

### VIOLATIONS OF THE OKLAHOMA UNIFORM SECURITIES ACT
### (All defendants)

87.     Plaintiff repeats and re-asserts the allegations contained in Paragraphs 1 through 86 as though fully set forth herein.

88.     The Oklahoma Uniform Securities Act makes it unlawful for any person in connection with the purchase or sale of securities to directly or indirectly engage in fraud, to make untrue statements of material fact or omit material facts and to engage in a deceptive acts or practices. 71 *Okla. Stat.* §§ 1-501, 1-502, 1-509.

89.     The Oklahoma Uniform Securities Act does not require a plaintiff to allege or prove reliance or a defendant's scienter. *Lillard v. Stockton*, 267 F. Supp. 2d 1081 (N.D. Okla. 2003).

## The Private Equity Fund

90.     In approximately March 2010, Defendants engaged in the sale of securities to Plaintiff in the form of a $390,000 investment in the Private Equity Fund.

91.     In connection with that investment, Defendants Ross and Stacy – as authorized agents for Defendants PV Capital and the Private Equity Fund – made false assertions and omissions of material fact.

92.     More specifically, Defendants Ross and Stacy deceptively represented to Plaintiff that he would enjoy 14% returns on his investment.

93.     As a direct result of the Defendants' fraudulent conduct, the Plaintiff suffered damages.

94.     Defendant Ross has committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.* because he employed a scheme to defraud Plaintiff into making a $390,000 investment in the Private Equity Fund premised on his representation that Plaintiff would earn 14% interest thereupon, which was material to Plaintiff's decision to invest.

95.     As a direct result of Defendant Ross's fraudulent conduct, the Plaintiff suffered damages.

96.     Defendant Stacy has committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.*, because he employed a scheme to defraud Plaintiff into making a $390,000 investment in the Private Equity Fund premised on his representation that Plaintiff would earn 14% interest thereupon, which was material to Plaintiff's decision to invest.

97.     As a direct result of Defendant Stacy's fraudulent conduct, Plaintiff suffered damages.

98.     Defendant PV Capital has committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.*, because Defendants Ross and Stacy, acting as its co-owners, materially misrepresented to Plaintiff that he would earn 14% interest on his $390,000 investment, which was material to Plaintiff's decision to invest.

99.     As a direct result of Defendant PV Capital's fraudulent conduct, Plaintiff suffered damages.

100.    The Private Equity Fund has committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.*, because Defendants Ross and Stacy, acting as its co-owners, materially misrepresented to Plaintiff that he would earn 14% interest on his $390,000 investment, which was material to Plaintiff's decision to invest.

101.    As a direct result of the Private Equity Fund's fraudulent conduct, the Plaintiff suffered damages.  Accordingly, Defendants Ross, Stacy, PV Capital, and the Private Equity Fund have violated 71 *Okla. Stat.* §§ 1-501 *et seq.* and Plaintiff is entitled to actual damages in the amount of $390,000, in addition to 14% interest thereupon, plus costs and reasonable attorneys' fees determined by the court.

## The Trading Fund

102.    In and around March 2011, Defendants engaged in the sale of securities to Plaintiff in the form of a $500,000 investment in the Trading Fund.

103.    In connection with that investment, Defendants Ross and Stacy – as authorized agents for PV Capital, the Trading Fund, and the Private Equity Fund – made false assertions and omissions of material fact.

104.    More specifically, Defendants Ross and Stacy deceptively represented to Plaintiff that he would enjoy 14% returns on his investment.

105.    Defendants Ross and Stacy, as agents for Defendants PV Capital, the Trading Fund and the Private Equity Fund, specifically assured Plaintiff that his $500,000 investment in the Trading Fund would be liquid and available for withdrawal at any time, which was of material importance to Plaintiff and false.

106.    Defendants Ross and Stacy also omitted their intention to misappropriate Plaintiff's $500,000 investment from the liquid Trading Fund to the illiquid Private Equity Fund.

107.    Without Plaintiff's knowledge or consent, Defendants Ross and Stacy, by and through PV Capital, wrongfully misappropriated Plaintiff's $500,000 investment in the Trading Fund as a loan to the Private Equity Fund.

108.    As a direct result of the Defendants' fraudulent conduct, the Plaintiff suffered damages.

109.    Defendant Ross has committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.*, because he employed a scheme to defraud Plaintiff into making a $500,000 investment in the Trading Fund premised on his representation that Plaintiff would earn 14% interest thereupon, which was material to Plaintiff's decision to invest.  Defendant Ross also omitted the material fact that he intended to misappropriate Plaintiff's $500,000 investment as a loan to the Private Equity Fund.

110.    As a direct result of Defendant Ross's fraudulent conduct, Plaintiff suffered damages.

111.    Defendant Stacy has committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.*, because he employed a scheme to defraud Plaintiff into making a $500,000 investment in the Trading Fund premised on his representation that Plaintiff would earn 14% interest thereupon, which was material to Plaintiff's decision to invest.  Defendant Stacy also omitted the

16

material fact that he intended to misappropriate Plaintiff's $500,000 investment as a loan to the Private Equity Fund.

112. As a direct result of Defendant Stacy's fraudulent conduct, Plaintiff suffered damages.

113. Defendant PV Capital committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.*, because Defendants Ross and Stacy, acting as its co-owners, materially misrepresented to Plaintiff that he would earn 14% interest on his $500,000 investment, which was material to Plaintiff's decision to invest. Defendant PV Capital, through Ross and Stacy, also omitted the material fact that it intended to misappropriate Plaintiff's $500,000 investment as a loan to the Private Equity Fund.

114. The Trading Fund has committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.*, because Defendants Ross and Stacy, acting as its co-owners, materially misrepresented to Plaintiff that he would earn 14% interest on his $500,000 investment, which was material to Plaintiff's decision to invest. The Trading Fund, through Defendants Ross and Stacy, also omitted the material fact that it intended to misappropriate Plaintiff's $500,000 investment as a loan to the Private Equity Fund.

115. As a direct result of the Trading Fund's fraudulent conduct, Plaintiff suffered damages.

116. The Private Equity Fund has committed securities fraud, pursuant to 71 *Okla. Stat.* §§ 1-501 *et seq.*, because Defendants Ross and Stacy, acting as its co-owners, materially misrepresented to Plaintiff that he would earn 14% interest on his $500,000 investment, which was material to Plaintiff's decision to invest, without any intention of returning the $500,000 or paying the promised interest. The Private Equity Fund, through Defendants Ross and Stacy, also omitted

the material fact that it intended to misappropriate Plaintiff's $500,000 investment as a loan to the Private Equity Fund.

117.    As a direct result of the Private Equity Fund's fraudulent conduct, Plaintiff suffered damages.

118.    Accordingly, Defendants have violated 71 *Okla. Stat.* §§ 1-501 *et seq.* and Plaintiff is entitled to actual damages in the amount of $500,000, in addition to 14% interest thereupon, plus costs and reasonable attorneys' fees determined by the court.

### COUNT III

### BREACH OF CONTRACT
**(All Defendants)**

119.    Plaintiff repeats and re-asserts the allegations contained in Paragraphs 1 through 118 as though fully set forth herein.

### The Private Equity Fund

120.    Plaintiff entered into an enforceable contract with Defendants PV Capital and the Private Equity Fund, through their agents and co-owners, Defendants Stacy and Ross, for a 14% return on his $390,000 investment in the Private Equity Fund.

121.    Defendants PV Capital and the Private Equity Fund, acting through Defendants Ross and Stacy, breached the contract by failing to pay Plaintiff the 14% interest.

122.    As a direct result of said breach, Plaintiff suffered damages consisting of his initial $390,000 investment, and 14% interest.

### The Trading Fund

123.    Plaintiff entered into an enforceable contract with Defendants PV Capital and the Trading Fund, through their agents and co-owners, Defendants Stacy and Ross, for a 14% return on his $500,000 investment in the Private Equity Fund.

18

124. Defendants PV Capital and the Trading Fund, acting through Defendants Ross and Stacy, breached the contract by failing to pay Plaintiff the 14% interest and by misappropriating said funds as a loan to the Private Equity Fund.

125. As a direct result of said breach, Plaintiff suffered damages consisting of his initial $500,000 investment, and 14% interest.

### COUNT IV

**ACTUAL FRAUD**
***15 Okla. Stat. § 58***
**(All Defendants)**

126. Plaintiff repeats and re-asserts the allegations contained in Paragraphs 1 through 125 as though fully set forth herein.

### The Private Equity Fund

127. Plaintiff made a $390,000 investment through Defendants Ross and Stacy, as co-founders of Defendants PV Capital and the Private Equity Fund, in the Private Equity Fund.

128. In connection with these transactions, Defendants Ross and Stacy made misrepresentations of material fact with regard to the 14% return Plaintiff could expect on his $390,000 investment with the Private Equity Fund.

129. Defendants Ross and Stacy made such misrepresentations and omissions of material fact in their capacities as co-owners of Defendant PV Capital and the Private Equity Fund.

130. Defendants Ross and Stacy knew the representations made to Plaintiff were false, but Plaintiff had no reason to question Defendants Ross or Stacy, and reasonably relied on their misrepresentations and omissions based on Plaintiff's longstanding friendship and business relationship of trust and confidence with Defendants Ross and Stacy.

131.    Defendants Ross and Stacy misrepresented and/or omitted material information with regard to Plaintiff's expected returns in order that Plaintiff would invest in the Private Equity Fund.

132.    As a direct result of Defendants Ross's and Stacy's conduct, as authorized agents for Defendants PV Capital and the Private Equity Fund, Plaintiff suffered damages exceeding $390,000 exclusive of interest.

133.    Accordingly, Defendants Ross, Stacy, PV Capital and the Private Equity Fund are liable for actual fraud pursuant to 15 *Okla. Stat.* § 58.

134.    Defendants are also liable for Category II punitive damages because they acted intentionally and with malice toward others.  Requisite malice may be inferred from gross negligence that indicates conscious indifference to consequences of one's acts or reckless disregard for safety of others.  Silkwood v. Kerr-McGee Corp., 769 F.2d 1451 (10th Cir. (Okla.) 1985).  Accordingly, and in accordance with 23 *Okla. Stat.* § 9.1(C), Defendants are be liable for punitive damages in an amount not to exceed the greatest of:

 a.   Three Hundred Ninety Thousand Dollars ($390,000.00);

 b.   Twice the amount of actual damages awarded; or

 c.   The increased financial benefit derived by Defendants as a direct result of the conduct causing the injury to Plaintiff and other persons or entities.

### The Trading Fund

135.    Plaintiff made a $500,000 investment through Defendants Ross and Stacy, as co-founders of Defendants PV Capital and the Trading Fund, in the Trading Fund which was later misappropriated as a loan to the Private Equity Fund.

136.   In connection with these transactions, Defendants Ross and Stacy made misrepresentations of material fact with regard to the 14% return Plaintiff could expect on his $500,000 investment with the Trading Fund.

137.   Defendants Ross and Stacy also concealed the fact that they intended to misappropriate Plaintiff's $500,000 as a loan from the Trading Fund to the Private Equity Fund.

138.   Defendants Ross and Stacy made such material misstatements and omissions in their capacities as co-owners of Defendants PV Capital and the Trading Fund.

139.   Defendants Ross and Stacy knew the representations they made to Plaintiff were false, but Plaintiff had no reason to question Defendants Ross or Stacy, and reasonably relied on their misrepresentations and omissions, based on Plaintiff's longstanding friendship and business relationship of trust and confidence with Defendants Ross and Stacy.

140.   Defendants Ross and Stacy misrepresented and/or omitted material information with regard to Plaintiff's expected returns in order that Plaintiff would invest in the Trading Fund.

141.   As a direct result of Defendants' conduct, Plaintiff suffered damages exceeding $500,000 exclusive of interest.

142.   Accordingly, Defendants Ross, Stacy, PV Capital and the Trading Fund are liable for actual fraud pursuant to 15 *Okla. Stat.* § 58.

143.   Defendants are also liable for Category II punitive damages because they acted intentionally and with malice toward others.   Requisite malice may be inferred from gross negligence that indicates conscious indifference to consequences of one's acts or reckless disregard for safety of others.   *Silkwood v. Kerr-McGee Corp.*, 769 F.2d 1451 (10th Cir. (Okla.) 1985).   Accordingly, and in accordance with 23 *Okla. Stat.* § 9.1(C), Defendants are be liable for punitive damages in an amount not to exceed the greatest of:

21

d.  Five Hundred Thousand Dollars ($500,000.00);

e.  Twice the amount of actual damages awarded; or

f.  The increased financial benefit derived by Defendants as a direct result of the conduct causing the injury to Plaintiff and other persons or entities.

## COUNT V

### CONSTRUCTIVE FRAUD
### 15 *Okla. Stat.* § 59
### (All Defendants)

144.   Plaintiff repeats and re-asserts the allegations contained in Paragraphs 1 through 143 as though fully set forth herein.

145.   Plaintiff and Defendant Ross shared a special relationship of trust and as a result of their long-term friendship, and Plaintiff's historical reliance on Defendant Ross as his investment advisor.

146.   Plaintiff and Defendant Stacy shared a special relationship of trust and confidence as a result of their long-term friendship, and Plaintiff's historical reliance on Defendant Stacy as his investment advisor.

147.   Due to their extensive understanding of and experience with investment strategies, Defendants Ross and Stacy maintained some degree of influence over Plaintiff's investments to the extent that Plaintiff placed his trust and confidence in their professional opinions and recommendations.

148.   As authorized representatives of Defendants PV Capital, the Trading Fund, and the Private Equity Fund, Defendants Ross and Stacy misstated and/or failed to disclose certain material facts to Plaintiff in connection with Plaintiff's investments in the Private Equity Fund and the Trading Fund.

149.   More specifically, Defendants Ross and Stacy, acting as agents with authority for Defendants PV Capital, the Trading Fund, and the Private Equity Fund, represented to Plaintiff that he would enjoy 14% returns on this $390,000 investment in the Private Equity Fund and his $500,000 investment in the Trading Fund. In addition, Defendants Ross and Stacy failed to disclose their intention to misappropriate the $500,000 investment in the Trading Fund as a loan to the Private Equity Fund.

150.   Plaintiff relied to his detriment on Defendants' misstatements and omissions, given their history of trust and confidence.

151.   Given the special relationship of trust and confidence that Defendants Ross and Stacy shared with Plaintiff, they had a duty and obligation of full and truthful disclosure.

152.   As a direct result of Defendants' Ross's and Stacy's misconduct, Plaintiff suffered damages exceeding $890,000, exclusive of interest.

153.   Accordingly, Defendants are liable for constructive fraud, pursuant to 15 *Okla. Stat.* § 59, because they breached a duty they owed to Plaintiff by virtue of their relationship of trust and confidence by misleading Plaintiff into believing that he would earn 14% return on his investments in order to gain advantage over Plaintiff's interests and misappropriate Plaintiff's investment to their own uses.

154.   Defendants Ross and Stacy are also liable for Category II punitive damages because they acted intentionally and with malice toward others.  Requisite malice may be inferred from gross negligence that indicates conscious indifference to consequences of one's acts or reckless disregard for safety of others. *Silkwood v. Kerr-McGee Corp.*, 769 F.2d 1451 (10th Cir. 1985). Accordingly, and in accordance with 23 *Okla. Stat.* § 9.1(C), Defendants are liable for punitive damages in an amount not to exceed the greatest of:

    a.  Eight Hundred Ninety Thousand Dollars ($890,000.00);

    b.  Twice the amount of actual damages awarded; or

    c.  The increased financial benefit derived by Defendants as a direct result of the conduct causing the injury to Plaintiff and other persons or entities.

## COUNT VI

### BREACH OF FIDUCIARY DUTY
### (Ross and Stacy)

155.    Plaintiff repeats and re-asserts the allegations contained in Paragraphs 1 through 154 as though fully set forth herein.

156.    Defendants Stacy and Ross were Plaintiff's longtime friends and investment advisors.

157.    Plaintiff trusted and reasonably relied on Defendants Stacy and Ross with regard to Plaintiff's investments.

158.    Defendants Stacy and Ross owed Plaintiff a fiduciary duty of care and confidence with regard to Plaintiff's $390,000 investment in the Private Equity Fund and Plaintiff's $500,000 investment in the Trading Fund.

159.    Defendants Stacy and Ross breached their fiduciary duties to Plaintiff by mismanaging Plaintiff's investments.

160.    More specifically, Defendants Stacy and Ross improperly failed to pay Plaintiff the 14% interest on both his $390,000 investment in the Private Equity Fund and his $500,000 investment in the Trading Fund.

161.    Defendants also wrongfully misappropriated Plaintiff's $500,000 investment in the Trading Fund as a loan to the Private Equity Fund.

162.   As a direct result of Defendants' Ross's and Stacy's conduct, Plaintiff suffered damages consisting of $890,000 exclusive of interest.

## REQUESTED RELIEF

WHEREFORE, by virtue of the foregoing, Plaintiff demands judgment in his favor and against Defendants as follows:

A.  Actual and consequential damages in an amount to be determined at trial;

B.  Exemplary damages in an amount to be determined at trial;

C.  Attorney fees and costs;

D.  Fines and penalties provided by applicable Federal and State law;

E.  Pre – and post-judgment interest as allowed by applicable Oklahoma law; and

F.  Such other and further relief as are justified by the evidence presented at hearings and the ultimate jury trial in this proceeding.

Respectfully submitted,

**Joel L. Wohlgemuth, OBA #9811**
**Caroline B. Lapish, OBA #31784**
**NORMAN WOHLGEMUTH CHANDLER & JETER**
401 South Boston Avenue
2900 Mid-Continent Tower
Tulsa, OK 74 103-4023
(918) 583-7571
(918) 584-7847 (facsimile)
jlw@nwcjlaw.com
cbl@nwcjlaw.com

**ATTORNEYS FOR PLAINTIFF, MICHAEL A.**
**FARLEY**